**Willard FREEMAN and John B. Martin,
Defendants Below, Appellants,**

v.

**STATE of Delaware, Plaintiff Below,
Appellee.**

Supreme Court of Delaware.

March 15, 1974.

Arlen B. Mekler, Asst. Public Defender, Wilmington, and Paul R. Steyermark, Asst. Public Defender, Wilmington, of counsel, for defendants below, appellants.

Joseph A. Hurley, Deputy Atty. Gen., Wilmington, for plaintiff below, appellee.

HERRMANN, Chief Justice, and CAREY and DUFFY, Justices, sitting.

CAREY, Justice:

Appellants Willard Freeman and John Martin contest their convictions of possession of a narcotic drug with intent to sell, and of conspiracy. The two were convicted at the conclusion of a three-day trial in Superior Court. The central question presented by this appeal is whether the arresting officers had probable cause to search and seize the automobile occupied by appellants.

The evidence which the State contends is probative of probable cause for the seizure and search is as follows:

Trooper Venable, a member of the Delaware State Police on assignment to the Federal Bureau of Narcotics and Dangerous Drugs in Philadelphia, was on duty in West Philadelphia on July 6, 1972. That afternoon, at approximately 12:30 p. m., at the corner of 52nd and Wyalusing Streets,[1] he saw appellant Martin cross the street and approach a 1967 white Chevrolet. This car was occupied by a man and a woman, neither of whom was then recog-

---

1. This area was described by the witness as being "highly involved in narcotics traffic."

nizable to Venable. Martin appeared to be conversing with the occupants of the car. After a 5-or-10-minute conversation, the car drove off, leaving Martin on the street. Martin then walked up to a male (unknown to Venable) and they met briefly (one to two minutes) on the sidewalk of Wyalusing Street. This is the language used by Trooper Venable to describe that encounter:

Q Did you have the black male and Martin under surveilance the entire time?

A Yes, sir. It was a very brief meeting. The black male walked down, I believe it was, Wyalusing Street toward Mr. Martin. Mr. Martin met him on the sidewalk there. They met very briefly and then Mr. Martin walked—both of them walked in opposite directions.

Q Are you able to give any information concerning the actions of the two men when meeting?

A No, sir, I'm not, other than the fact that they met and they appeared to be speaking to each other. But outside of that, I couldn't tell you what happened.

Q Was it any more than a casual good morning they passed each other?

A It was more than that, it appeared to me. They were standing together for a few minutes, a very brief period of time, a few minutes, maybe two minutes, and then they departed.

Martin then walked to the corner. The Chevrolet returned, picked him up, and left the area.

Trooper Venable had observed this activity from a telephone booth, and during the course of Martin's conduct, he had been relaying his observations to Trooper Neal of the Delaware State Police, who was at his office in Delaware. Although their conversation was not uninterrupted, Venable and Neal spoke to each other for approximately thirty minutes. In that time, Venable related to Neal the facts set forth above and informed him of the license number of the 1967 Chevrolet. Neal ascertained that the car was owned by Willard Freeman.

Acting on the information received from Venable, Neal dispatched Trooper Harrell of the Delaware State Police and Corporal Testa of the New Castle County Police to I-95 near the Pennsylvania-Delaware border to await the arrival of the aforementioned Chevrolet. Two police cars stopped appellants' car shortly after it entered Delaware (approximately 2:00 p. m.).

The car was being driven by Diane Kemski (State's witness in the proceedings below), and appellants Freeman and Martin were passengers. Corporal Testa approached the right side of the car and asked all of the occupants to get out; he told them he was going to search the car for drugs. Freeman and Martin exited the car on the right side and showed some identification. Corporal Testa saw a bag of "white powdery substance" on the front seat of the car and arrested Freeman. Appellants were then taken to the police car and held for trial. Meanwhile, Harrell told Kemski to empty her pockets, at which time two more bags were discovered. Kemski was then arrested and, when told that she would be searched by a police matron unless she turned over the drugs which the police suspected she was carrying, she produced a large quantity of heroin which had been concealed on her person.

An analysis of the facts which occurred after the car was stopped is not material to the disposition of this case. We hold that the initial seizure of appellants' car was unreasonable, and thus in violation of the familiar state and federal constitutional guarantees against unreasonable searches and seizures. U.S.C.A.Const. Amend. 4; Del.C.Ann.Const. art. 1, § 6.

██ It is well established that a search or seizure without a warrant must

be based upon probable cause, and must be necessitated by circumstances which make the securing of a warrant impracticable. While the "automobile exception" is one of the carefully-defined exceptions to the rule that a warrant be obtained before a search or seizure, it nevertheless requires the existence of probable cause and exigent circumstances. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). We do not herein determine whether the police were confronted with exigent circumstances, for we are without doubt that they lacked probable cause to stop this vehicle.[2] We reach this conclusion only after having considered the facts of this case in the light most favorable to the State. Miller v. State, Del.Supr., 310 A.2d 867 (1973). Even assuming that Trooper Venable had related personally to the arresting officers each and every detail of the incident which he had observed in Philadelphia, that information, as disclosed by Venable's testimony, falls far short of probable cause for a search, seizure, or an arrest. The facts within the policemen's knowledge were not sufficient to warrant a reasonable man in believing that a crime had been, or was about to be, committed. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); Garner v. State, Del.Supr., 314 A.2d 908 (1973); State v. Davey, Del. Super., 8 Terry 221, 89 A.2d 871 (1952). Trooper Venable saw no transaction between Martin and the unknown male whom he met on the sidewalk; nor did he hear their conversation; nor did he see anything passed between Martin and the occupants of the Chevrolet. In the words of Mr. Chief Justice Warren in Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), Martin and his acquaintances "might have been talking about the World Series." In the requisite balancing of the necessities of effective law enforcement and the constitutional rights of citizens to be protected against arbitrary police action, we find the scales tilted decisively in favor of the appellants in this case. Suspicion is no substitute for probable cause.

It follows from what we have said that the search of Miss Kemski was unreasonable, and that the evidence obtained as the result of the unlawful search and seizure should have been excluded in the prosecution of these appellants. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

The judgment of conviction must be reversed.

---

2. There was no testimony of any violation of the motor vehicle laws.