William A. YOUNG, Defendant below,
Appellant,

v.

STATE of Delaware, Plaintiff below,
Appellee.

Supreme Court of Delaware.

Argued April 16, 1975.

Decided May 15, 1975.

John M. Stull and Mary Ann Taufen, Asst. Public Defenders, Wilmington, for defendant below, appellant.

Eugene M. Hall, Deputy Atty. Gen., Wilmington, for plaintiff below, appellee.

Before HERRMANN, Chief Justice, and DUFFY, Justice, and McNEILLY, Justice.

DUFFY, Justice:

The sole issue in this appeal from a conviction for misdemeanor-theft, 11 *Del.C.* § 841, is whether the Trial Court should have granted a motion to suppress a television set retained by the police when defendant was released without charge after a two-hour detention. 11 *Del.C.* § 1902.

I

The State's evidence was as follows:

About 6 P.M. on January 16, 1974, two police officers, in plain clothes and an unmarked car proceeding south on Market Street, stopped for a red traffic signal at Fourteenth Street. A 1967 Buick Riviera stopped, parallel to them, at the same place; two males were in the front seat, a

large console television was on the rear seat.[1] The officers observed both men, who looked at them and then turned away "several times"; the officers concluded that the men were acting in a "very suspicious manner." Shortly before this, the police had heard a radio report of a burglary at 1805 Market Street, which is in a residential area some four blocks distant. One officer testified that in his experience ten percent of residential burglaries involve the theft of a television set.

The police stopped the men and asked each for his name, address, identification and business abroad.[2] The men gave vague and inconsistent stories about where they were going and could not "satisfactorily explain" the origin of the TV.[3] They were taken to the police station and released without arrest at the end of two hours. Because the men could not produce evidence of ownership, the TV was retained by the police.

Defendant was arrested after the owner of the TV reported the theft. This appeal followed his conviction.

## II

Considering the facts in the light most favorable to the State, *Miller v. State*, Del.Supr., 310 A.2d 867 (1973), *Samuels v. State*, Del.Supr., 253 A.2d 201 (1969), we

assume that there was sufficient justification to stop and detain defendant under 11 *Del.C.* § 1902. Compare: Annot., 45 *A.L. R.3d* 581. The police officers therefore had the "right to be in a position" to observe the television which was in "plain view" on the back seat of the automobile. *Miller v. State*, supra; *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), rehearing denied, 404 U.S. 874, 92 S.Ct. 26, 30 L.Ed.2d 120; *Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968).

Since there was not a "search" within the meaning of the Fourth Amendment or the Delaware Constitution, Art. I, § 6, Del.C.Ann., *Miller*, supra, we must focus on the validity of the seizure. Most of the case law centers around a search of doubtful legality (and any seizure derived from an illegal search is, of course, tainted). Cases considering seizure only are relatively few. It is clear, however, that,

"Search and seizure are separate acts. Each must satisfy the constitutional requirement of reasonableness. A search can be legal, yet the resultant seizure of property or papers discovered in the course thereof may be illegal." *United States v. Thomas*, 16 U.S.C.M.A. 306, 36 C.M.R. 472, quoted with approval in *State v. Elkins*, 245 Or. 279, 422 P.2d 250 (1966).

1. Both men were later processed in the way described herein but this appeal involves only one of them, William A. Young (defendant), and only his rights are considered.

2. 11 *Del.C.* § 1902 provides:
   "(a) A peace officer may stop any person abroad, or in a public place, who he has reasonable ground to suspect is committing, has committed, or is about to commit a crime, and may demand of him his name, address, business abroad, and where he is going.
   (b) Any person so questioned who fails to identify himself or explain his actions to the satisfaction of the officer may be detained and further questioned and investigated.

   (c) The total period of detention provided for by this section shall not exceed 2 hours. The detention is not an arrest and shall not be recorded as an arrest in any official record. At the end of the detention the person so detained shall be released or be arrested and charged with a crime."

3. Defendant said that he had just won the set in a "crap game" but could not recall from whom he had won it or the exact situs of the game. He stated that he was selling it to his companion in the Buick. The latter at first denied any knowledge of the set but later acquiesced in defendant's version, saying, however, that it was Young's television and not his.

In essence, the State argues that since the object was in plain view it was subject to seizure and properly admissible in evidence. But that hypothesis proves too much. Clearly all objects in plain view are not *a fortiori* seizable; if they were, constitutionality would be tested by the vision of a police officer. Manifestly, there must be a nexus between an object seized and criminal activity. It must be, for example, "immediately apparent to the police that they have evidence before them." *Coolidge,* supra; and compare *Harris,* supra (registration card known to belong to robbery victim seized), *State v. Wesson,* 260 Iowa 781, 150 N.W.2d 284 (1967) (seized bonds known to be stolen by comparison of serial numbers); see also *People v. Seligman,* 35 A.D.2d 591, 313 N. Y.S.2d 593 (1970), modified on other grounds, 28 N.Y.2d 788, 321 N.Y.S.2d 901, 270 N.E.2d 721.

■ Thus, the critical question here is whether at the time of seizure the police had probable cause to believe that the television was stolen. Cf. *Dixon v. State,* Md.App., 327 A.2d 516 (1974); *Elkins,* supra. Time is critical because an after-the-fact determination that an item was contraband will not cure a seizure made without warrant or other right in law. As the Supreme Court of Oregon said in *Elkins,* supra:

"If the rule were otherwise, an officer who desired to inculpate an arrested person in another crime, could seize everything in such person's immediate possession and control upon the prospect that on further investigation some of it might prove to have been stolen or to be contraband. It would open the door to complete temporary confiscation of all an arrested person's property which was in his immediate possession and control at the time of his arrest for the purpose of a minute examination of it in an effort to connect him with another crime. Such a practice would be as much as exploratory seizure as one made upon an arrest for which no probable cause existed. Intolerable invasions of a person's property rights would be invited by an *ex post facto* authorization of a seizure made on groundless suspicion."

■ Since there was not a prior determination of probable cause, by what right was the article seized and retained? Absent a showing of probable cause, the circumstances clearly were not "exigent" within the meaning of *Warden, Maryland Penitentiary v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). And the seizure was not incident to arrest because none was made at the time.

The State's contention that the detention here was in actuality a "mislabeled arrest" as in *State v. Bowden,* Del.Supr., 273 A.2d 481 (1971), is not consistent with the facts. Defendant was released following the detention period and thus there was not an arrest at that time under any label or theory. In *Bowden* sufficient cause for arrest arose immediately upon the initial stop because of the obvious nature of the contraband (a large number of coin boxes) and the attendant circumstances (late at night and "furtive" conduct by defendants).

■ Finally, the State argues that it had a right to hold the TV because the possessors could not prove ownership. But the burden was on the seizing officers to show, consonant with probable cause, that it was contraband, not on defendant to prove ownership.

### III

■ In sum, we find no basis in logic or law to infer that probable cause existed to believe the set was stolen when, concurrently, no such cause existed to believe that those in possession thereof had stolen it. We are not "unaware of the practical demands of effective criminal investigation

and law enforcement," *Elkins v. U. S.,* 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960), but nor are we unmindful that:

" . . . if contraband may be legally seized when the officer does not have reasonable grounds to believe it is such, it will lead to many interferences with property when the officer's groundless suspicions are wrong." *State v. Elkins,* supra.

And suspicion is no substitute for probable cause. *Freeman v. State,* Del.Supr., 317 A.2d 540 (1974).

It follows that seizure of the television set following expiration of the detention period was unreasonable under the Fourth Amendment and the Delaware Constitution, Art. I, § 6. Hence, it was error to admit it into evidence.

\* \* \* \* \* \*

Reversed and remanded for a new trial.