**STATE of Delaware, Plaintiff,**

v.

**Steven PHILLIPS, Defendant.**

Superior Court of Delaware, Kent.

Submitted March 24, 1976.

Decided Sept. 28, 1976.

Kenneth R. Abraham, Deputy Atty. Gen., Dover, for plaintiff.

I. Barry Guerke of Schmittinger & Rodriguez, Dover, for defendant.

LONGOBARDI, Judge.

The Defendant was indicted by the Kent County Grand Jury on two counts of burglary, two counts of theft and for possession of marijuana. Subsequently, he filed a motion to suppress and an evidentiary hearing on the matter was held on March 24, 1976.

The parties are in agreement that on December 16, 1975 at approximately 5:00 p. m., Mr. Robert Hake, the landlord of Kent Apartments in Dover, along with Mr. Alfred Orsinger, the apartment mainte-

nance man, entered Defendant's apartment for the purpose of exterminating rats and roaches reportedly infesting the entire building. The Defendant was not present at the time of the entry. The parties agree that Defendant requested the extermination be performed but Defendant states that he assumed that notice would be given him regarding entry to his premises for those purposes but he never received such notice. Mr. Hake and Mrs. Cox, the resident manager, however, assert that notes informing Phillips of the planned extermination were left on Defendant's door on several occasions and the pass-key entry was made only in a desperate attempt to alleviate a potential health hazard in the form of the vermin which apparently were enjoying free run of the premises.

After entering the unit and preparing to set up their equipment, the men recognized several items of furniture in the living room as being part of a collection of home furnishings Hake was storing in apartment No. 6 as bailee for a bankruptcy proceeding. The two men immediately left the apartment and notified the attorney acting as Trustee in Bankruptcy who advised them to call the police. Hake did so and indicated to the police the four specific items from the bankruptcy bailment he saw within the Defendant's apartment.[1] A search warrant was issued listing only these fourt items. The next day, police conducted a search of the apartment pursuant to this warrant. The four items listed in the warrant, all located in the living room, were seized, as were numerous other items identified by Hake by reference to the bankruptcy inventory. Some of these additional items, however, were found in the adjoining bedroom, as was a quantity of marijuana within one of the inventory items, a carved wooden box. The officers also seized numerous items of stereo equipment located in the living room and a water pipe, a jar of "roaches" (marijuana cigarette remnents) and a clear plastic bag of marijuana which were found in the bedroom.

The Defendant argues that the probable cause for the issuance of the search warrant was obtained through the unlawful intrusion and search of the apartment by Hake and Orsinger thereby invalidating the warrant in its entirety as "fruit of the poisonous tree" and calling for the suppression of all evidence seized. In addition, the Defendant argues that the search and seizure should have been confined to the four items listed in the warrant. Since all four items were quickly located in the living room, no further intrusion into the rest of the apartment was justified and all items not listed in the warrant must be suppressed.

Specifically, Defendant asserts that the actions of Hake and Orsinger in entering and searching his apartment without his consent were violative of 11 Del.C. 2301, which provides:

> "No person shall search any person, house, building, conveyance, place or other thing without the consent of the owner (or occupant, if any) unless such search is authorized by and made pursuant to statute or the Constitution of the United States."

Both parties agree that this statute provides a broad protection against unreasonable searches and seizures because it includes the word "person" which they contend means anybody. The Court is not prepared to accept that view.

 An analysis of our constitutional history shows the framers were concerned with the protection of persons and private property from the sovereign's intrusion. Their formulation and adoption of the Fourth Amendment ". . . was not intended to be a limitation upon other than governmental agencies." *Burdeau v. Mc-*

---

1. A glass top table, a small mahogany end table, a green candle holder and a ten inch Venus figurine.

*Dowell*, 256 U.S. 465, 41 S.Ct. 574, 65 L. Ed. 1048 (1921). See also, *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Ward v. State*, 30 Md.App. 113, 351 A.2d 452 (1976); *State v. Bookout*, Fla.App., 281 So.2d 215 (1973); *Wolf v. State*, Miss. Supr., 281 So.2d 445 (1973). Article I, Section 6 of the Delaware Constitution, the search and seizure provision, is substantively identical to the Federal provision and unquestionably protects the same interests. *State v. Moore*, Del.Super., 187 A.2d 807 (1963).

■ The Legislature of the State of Delaware enacted 11 Del.C., Chapter 23 to implement Article I, Section 6 of the Delaware Constitution. An examination of that chapter indicates the Legislature was concerned with searches made by the State or its agents. Section 2301 is not an exception merely because it starts with the words "No person . . . ." A common sense interpretation of that statute is that it prohibits searches without consent or unless made pursuant to statute or the Constitution of the United States by persons proscribed from making unreasonable searches and seizures, that is, the State or its agents. The phrase "no person" means no governmental person. There is no purpose to protect against citizens' intrusion because the civil law covers that most adequately. In short, the statute is to be construed as an inartistic attempt to implement not supplement the Constitution.

The question that remains is whether the exclusionary rule is to be expanded to cover searches and seizures by ordinary citizens such as in this case. (These "ordinary citizens" are not to be confused with citizens who act on behalf of the government or who may be construed as agents or "arms" thereof without the formality of being actual employees of the Government.)

■ Traditionally, the exclusionary rule has been confined to governmental rather than private action, *Burdeau v. McDowell* (supra); *United States v. Harless*, (9th Cir.), 464 F.2d 953 (1972), and actions wherein a private citizen acts as an instrument or agent of the State, *Coolidge v. New Hampshire* (supra).

■ Even if the actions of Hake and Orsinger are viewed as a search, the exclusionary rule should not be available as a remedial tool when the search is conducted by a private, nongovernmental citizen. *State v. Ahlgren*, Del.Super., 1375 Cr.A. 1972 (unreported opinion by Judge O'Hara dated January 23, 1973). In short, the search warrant is not rendered invalid by the allegedly unlawful conduct of Hake and Orsinger.

■ Defendant further argues that the authorized scope of the search warrant should not be extended beyond those items specifically listed in the warrant. The rationale behind the requirement for specificity in search warrants is to prevent general exploratory searches and to leave as little as possible to the discretion of the officer executing the warrant. *Marron v. United States*, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927). In certain instances, however, the officer executing the warrant is given license to exercise some discretion and seize items not listed in the warrant. The United State Supreme Court has repeatedly ruled that items within the "plain view" of an officer are subject to seizure and may be introduced into evidence provided he has a right to be there. *Coolidge v. New Hampshire* (supra); *Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L. Ed.2d 1067 (1968); *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). In addition, however, there must be a nexus between the object seized and criminal behavior, *Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); *Young v. State*, Del.Supr., 339 A. 2d 723 (1975), and there must be probable cause. As stated by the Supreme Court of

Alaska in *State v. Davenport*, Alaska, 510 P.2d 78, 85 (1973):

"The officers must have probable cause to believe that the article not named in the warrant, but found during the search, will aid in a particular conviction for an offense. Probable cause, under these circumstances exists only when the information the officers possess immediately following discovery is sufficient to warrant a reasonable man of reasonable caution in the belief that an offense has been or is being committed."

Viewing the instant case in the light of the above authorities, it is clear that items which were on the bankruptcy bailment inventory but not listed in the warrant may be seized and introduced into evidence only if those objects were in the "plain view" of an officer who was lawfully in a position to have that view and the officer had probable cause to believe that there was a nexus between the object seized and criminal behavior. Hake and Orsinger had been able to positively recognize only four items duirng their brief presence in the apartment the day before. Only these four items appeared on the search warrant. It would be unreasonable to suggest that Hake and Orsinger should have stayed in the apartment to make an exhaustive inventory of the bankruptcy goods therein. Likewise, it would be unreasonable to require Hake to rely upon his recollection of the contents of the bankruptcy bailment inventory form which he did not have in his possession when he entered the apartment. The inventory list subsequently given to the officers prior to or contemporaneous with their search was sufficient probable cause to believe the unlisted objects which were in "plain view" and identified by Hake were indeed stolen. Furthermore, it is clear that the officers were properly in the living room, could see into the bedroom from the living room and, in so doing, identify additional items from the bankruptcy inventory which were not in the warrant but in "plain view."

 Obviously, the officers would not be justified in seizing objects not listed in the warrant if they came into the "plain view" of the officer only after he opened an interior door, drawer or closet and after all items listed in the warrant had already been seized. The record proves, however, that all of the items on the bankruptcy inventory, apart from those listed in the warrant, were in the plain view of the officers. Thus, the Defendant's motion to suppress those seized objects which were part of the bankruptcy inventory, but not mentioned in the search warrant, is denied.

 Among the bankruptcy inventory items seized was a small, carved, wooden box in which the officers found a quantity of marijuana. The officer's action in opening the box to ascertain its contents was reasonable under the circumstances. There was every indication that the inspection was not a search for evidence but a good faith inventory to verify that none of Defendant's personal property was being seized or that it may have contained a dangerous item or substance along with the stolen box. Thus, any contraband, such as the marijuana, coming into the plain view of the officers during the inventory was subject to seizure and admissible into evidence in a subsequent criminal proceeding. See *Harris v. United States* (supra); *State v. Gwinn*, Del.Supr., 301 A.2d 291 (1972). The motion to suppress the marijuana found within the carved wooden box is likewise denied.

 With regard to the stereo equipment seized by the officers, I will deal first with that equipment which was identified as belonging to Mr. Burlingame, another tenant in the building. The Defendant attacks the procedure employed by Lt. Hutchinson, one of the officers conducting the search. The officer brought along a list of the serial numbers of Burlingames's stolen stereo equipment and was able to identify them when he saw them in plain view in the living room soon after his entry. The Defendant asserts that they

should have been included in the warrant. I do not agree. Suspicion is no substitute for probable cause. *Freeman v. State*, Del.Supr., 317 A.2d 540 (1974). The officer was lawfully in the premises and his discovery of the stereo equipment was inadvertent. *Coolidge v. New Hampshire* (supra). In a factual context markedly similar to that of the instant case, the Supreme Court of Kansas stated:

"A police officer knows of many thefts and is always on the lookout for known stolen property whether listed on a warrant or not. This does not mean he is acting in bad faith in executing a warrant on which particular items are listed for search." *State v. Hubbard*, 215 Kan. 42, 523 P.2d 387, 390 (1974).

The motion to suppress Burlingame's stereo equipment is denied.

■ The motion to suppress the other stero equipment is granted. Sgt. Staats testified that all of the stero equipment in the apartment was seized because it was quite a bit of equipment to be in one place and he wanted to check it out to be sure it was not stolen. (Hearing transcript, p. 92). This simply does not rise to the level of probable cause. There was no justification for the seizure of this equipment. As our State Supreme Court has stated:

"[T]he burden was on the seizing officers to show, consonant with probable cause, that it was contraband, not on defendant to prove ownership." *Young v. State*, 339 A.2d at 725.

■ There remains only the motion to suppress the bag of marijuana, the water pipe and the jar of roaches. The State concedes that the clear plastic bag of marijuana was inside a drawer. The parties are in disagreement with regard to the location of the water pipe and the jar of roaches but I am not satisfied that they were located within the plain view of the officers. Clearly, there was no justification for the search into areas beyond the plain view of the officers. While "plain view" doctrine serves to justify the seizure of items not listed in the warrant, such items once seized cannot give independent vitality to a search of areas not within the plain view of the officers. This constitutes "bootstrapping" and does not give the officers probable cause to delve into such closed areas after all items specifically listed in the warrant had been located by the officers. The motion to suppress the aforementioned three items is granted.

IT IS SO ORDERED.