Jamal A. WICKS, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

Supreme Court of Delaware.

Submitted: March 22, 1988.
Decided: Nov. 10, 1988.

Nancy J. Perillo, for appellant.

Timothy J. Donovan, Jr. (argued) and David G. Culley, Deputy Attys. Gen., Wilmington, for appellee.

Before CHRISTIE, C.J., and HORSEY, and MOORE, JJ.

CHRISTIE, Chief Justice.

The defendant/appellant, Jamal A. Wicks, was convicted as a result of a nonjury trial of two counts of rape in the first degree, kidnapping in the first degree, burglary in the first degree, theft, robbery in the first degree, and possession of a deadly weapon during the commission of a felony. On January 9, 1987, Wicks was sentenced for his convictions of rape in the first degree to two consecutive life sentences without the possibility of parole for twenty years.

Wicks contends that the initial search of his residence, which yielded evidence linking him to the crimes, was not supported by probable cause. As a result, Wicks argues that the first search and also a subsequent search, which was premised on evidence seized in the initial search, violated the protections afforded him by the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 6 of the Delaware Constitution

against unreasonable searches and seizures.

Wicks also contends that the preclusion from parole eligibility for twenty years under each of the life sentences imposed for his convictions of rape in the first degree was erroneous as a matter of law.

We hold that the initial search of Wicks' residence was supported by probable cause, and the evidence seized from that search and the evidence subsequently seized in a second search of his residence was properly admitted into evidence at trial.

⁕ ⁕ ⁕

The evidence indicates that on January 17, 1986, the defendant/appellant, Jamal A. Wicks, brutally and repeatedly raped the victim at knife point in her home. During the course of the crime, Wicks took money, a diamond pendant, a stereo system, two cameras, and some liquor.

Approximately one month after these crimes had been committed, Wicks, who was still at large, contacted a person he apparently thought to be one willing to buy stolen goods. In fact, the individual was an undercover federal agent of the Bureau of Alcohol, Tobacco and Firearms. Wicks offered to sell this individual a handgun. The agent concluded that the gun was stolen because of the nature of his conversation with Wicks and because Wicks had contacted him via an unlisted number the agent had circulated in the community for the purpose of attracting those with stolen weapons to sell. The agent then got in touch with the Wilmington Police Department. The Wilmington Police conducted an investigation which revealed that Wicks was wanted in Pennsylvania for a parole violation. On February 24, 1986, the police obtained a warrant which authorized a search of Wicks' residence for Wicks himself and for a handgun and any ammunition.

On the morning of February 25, the federal agent, accompanied by Wilmington Police, went to Wicks' residence where the agent, still posing as a fence, met with Wicks in order to buy the gun. The agent was equipped with an electronic device which enabled the police officers to monitor the conversations he had with Wicks. Wicks told the agent that he had already sold the gun. The federal agent asked Wicks if he had anything else to sell, to which Wicks responded that he had some cameras. Wicks went back inside his house briefly and returned with a camera case and walked down to the federal agent's car. At that point, Wicks was placed under arrest as a fugitive and was advised that he was a suspect in a robbery of a Cumberland Farms store which had occurred the previous night.

Police officers then executed the search warrant at Wicks' residence. Although the handgun was not found, the police seized a number of items including a Minolta camera found in Wicks' bedroom.

Later that day, a detective who was heading the rape investigation viewed the items taken from Wicks' home. He remembered that a Minolta camera had been stolen from the rape victim approximately one month previously. The victim subsequently identified the camera as similar to the one stolen by her assailant. The detective then compared Wicks' fingerprints with latent prints found at the scene of the rape and discovered that they matched.

The police then obtained a second warrant to search Wicks' residence for evidence of the rape. Seized during this search were a stereo system and camera case stolen from the rape victim as well as gym shorts and shoes believed to have been worn by Wicks during the course of the rape.

PROBABLE CAUSE

Wicks' argument that the police lacked probable cause to seize the camera without a warrant listing the camera is two-pronged. First, Wicks contends that, although in possession of a valid search warrant, the police nevertheless lacked probable cause to enter his residence following his arrest. Specifically, Wicks contends that the probable cause which supported the issuance of the search warrant dissipated once he informed the police that he had no guns to sell, thus rendering the warrant

stale. Since the search warrant authorized a search for stolen guns and ammunition, there existed no basis to justify its execution. This argument presupposes that the police believed, or should have believed, Wicks' statement that he no longer had any guns to sell. The defense argues that this statement did have sufficient indicia of truthfulness because Wicks had no reason to lie to the police officers and, in fact, he admitted that he had other property to sell, namely two cameras. Second, Wicks contends that even if the police were legitimately on the premises, they lacked probable cause to seize the camera found in his bedroom under the plain view doctrine because the police had no knowledge that the camera was contraband or evidence of criminal activity.

A well-established principle of Fourth Amendment law is that searches and seizures within a home conducted without a warrant based on probable cause are presumed to be unreasonable. *Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980); *Mason v. State*, Del.Supr., 534 A.2d 242, 247 (1987). The determination of whether probable cause has been shown is made on an *ad hoc* basis, depending on the nature of the criminal activity and evidence involved. *Blount v. State*, Del.Supr., 511 A.2d 1030, 1033 (1986); *Jensen v. State*, Del.Supr., 482 A.2d 105, 111 (1984). Probable cause to justify the issuance of a search warrant must exist at the time the warrant is sought. *See Blount v. State*, 511 A.2d at 1033; *Jensen v. State*, 482 A.2d at 111. In the instant case, Wicks does not dispute the existence of probable cause for the initial issuance of the search warrant but, rather, contends that circumstances occurring between the issuance of the warrant and its execution rendered it stale and thus invalidated it. *See Jensen v. State*, 482 A.2d at 111–12.

■ We hold that the Superior Court did not err in ruling that the search warrant was not rendered stale on the basis of Wicks' statement to police that he no longer had firearms to sell. The police were simply not required to believe this state-

ment. In this case an agent of the Bureau of Alcohol, Tobacco and Firearms had posed in an undercover capacity as a fence named "Marco" who was willing to buy stolen goods, especially firearms. To effectuate this undercover operation, he had circulated in the Wilmington area a confidential, unlisted telephone number through which those with goods to sell could contact him. On February 20, 1986, approximately one month after the commission of the offenses for which Wicks was convicted, the agent received a telephone call on his confidential line from an individual who identified himself as "Jamal" and who said he wished to sell "Marco" a .357 handgun for a hundred dollars. Subsequently, the agent received two other calls from Jamal, both regarding the sale of the gun which Wicks led the agent to believe had been stolen from the Philadelphia area. The agent then contacted the Wilmington Police who, with the agent, investigated the matter and discovered that "Jamal" was the defendant Jamal Wicks and that he lived at the address he had given "Marco". The police also learned that Wicks previously had been arrested by the Wilmington Police, most recently in December, 1985, and that he was currently wanted in Pennsylvania for a parole violation.

In light of the circumstances of this case and Wicks' prior criminal history which was known to the police, the police were justified in questioning the veracity of Wicks' statement that he no longer had any firearms to sell. The Superior Court did not err in ruling that Wicks' statement did not render the search warrant stale and, as a result, the police were in possession of a valid search warrant at the time they entered Wicks' residence.

However, even though the search of Wicks' residence may have been lawful, there must also be separate justification for the seizure of the camera. Searches and seizures are separate acts, and each must satisfy the constitutional requirement of reasonableness. *Young v. State*, Del. Supr., 339 A.2d 723, 724 (1975). Thus, a search can be legal while the resulting seizure may be illegal. *Id.*

The camera seized from Wicks' bedroom was not an item named in the warrant and thus was outside the scope of the warrant. The seizure of the camera was reasonable, however, if the seizure was permissible under the plain view doctrine. In *Coolidge v. New Hampshire,* a plurality of the Supreme Court outlined the conditions for the application of the plain view exception to the warrant requirement of the Fourth Amendment. 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564, 583 (1971). The plurality held that when police have prior justification for an intrusion and inadvertently come across an item of immediately apparent evidentiary value, they may seize that item. *Id.*

The first prerequisite for the application of the plain view doctrine is that the police must be lawfully engaged in an activity in a particular place that brings the officer within plain view of the item to be seized. *Texas v. Brown,* 460 U.S. 730, 739, 103 S.Ct. 1535, 1542, 75 L.Ed.2d 502, 512 (1983) (plurality opinion); *Coolidge v. New Hampshire,* 403 U.S. at 466, 91 S.Ct. at 2038, 29 L.Ed.2d at 583. Prior justification may arise through the issuance of either a search warrant or an arrest warrant, or through a recognized exception to the warrant requirement. *Coolidge v. New Hampshire,* 403 U.S. at 465, 91 S.Ct. 2037–38, 29 L.Ed.2d at 582. In this case, as previously explained, the police were in possession of a valid search warrant and, therefore, were validly on the premises.

The second prerequisite under the *Coolidge* case is that the police came across the item inadvertently. *Id.,* at 469, 91 S.Ct. at 2040, 29 L.Ed.2d at 585. However, in *Texas v. Brown,* 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (plurality opinion), the Justices of the Supreme Court were sharply divided on the issue of whether inadvertence is required for application of the plain view doctrine. Wicks originally had argued that the search for handguns was purely a pretext and, therefore, failed to satisfy this inadvertence requirement, but he abandoned this point in his appeal.

The third prerequisite for a lawful plain view seizure is that the item seized be of immediately apparent evidentiary value. *Coolidge v. New Hampshire,* 403 U.S. at 466, 91 S.Ct. at 2038, 29 L.Ed.2d at 583. In *Texas v. Brown,* the Court explained that the police meet the "immediately apparent" requirement of the *Coolidge* case if they have probable cause to associate the property in plain view with criminal activity. 460 U.S. at 741–42, 103 S.Ct. at 1543, 75 L.Ed.2d at 513–14; *see also Young v. State,* 339 A.2d at 725 ("Manifestly, there must be nexus between an object seized and criminal activity.").

Courts, when reviewing whether an item seized pursuant to the plain view doctrine was of immediately apparent evidentiary value, may consider the collective knowledge and experience of the police officers lawfully on the premises. *See Texas v. Brown,* 460 U.S. at 742–43, 103 S.Ct. at 1543, 75 L.Ed.2d at 514 (in determining whether police had probable cause for seizure of item, court may consider experience and knowledge of police officer); *Mezzatesta v. State,* Del.Supr., 166 A.2d 433, 437 (1960) (in determining whether probable cause existed for issuance of a warrant, judge may consider the experience and special knowledge of police); *State v. Reader,* Del.Super., 328 A.2d 146, 148 (1974) (in order to ascertain whether probable cause existed to support intrusion, court must consider sum total of all information including what police knew and their observations as trained officers). Police are not required to know for a fact that certain items are contraband or evidence in order to seize those items. *Texas v. Brown,* 460 U.S. at 741–42, 103 S.Ct. at 1543, 75 L.Ed. 2d at 513–14. Rather, at the time the seizure occurs under the plain view doctrine, the police must have probable cause to believe that the property seized may be contraband or useful as evidence of a crime. *Arizona v. Hicks,* 480 U.S. 321, 107 S.Ct. 1149, 1153, 94 L.Ed.2d 347, 355 (1987); *Texas v. Brown,* 460 U.S. at 741–42, 103 S.Ct. at 1543, 75 L.Ed.2d at 513–14; *Young v. State,* 339 A.2d at 725. An after-the-fact determination that an item was contraband or useful as evidence of a crime will not cure a seizure made without a warrant or other right of the law. *Young v. State,*

339 A.2d at 725. If police suspect that an item they inadvertently view is stolen property, the burden is on the seizing officers to show, consonant with probable cause, that an item may have been contraband or useful as evidence of a crime; the burden is not on the defendant to prove ownership. *Id.* Further, while police may be suspicious that an item is stolen, "suspicion is no substitute for probable cause." *Id.* at 726 (citing *Freeman v. State*, Del.Supr., 317 A.2d 540 (1974)).

■ The Superior Court did not err in ruling that, under the circumstances of this case, the police had probable cause at the time they seized the camera to believe that it was stolen. Wicks had contacted the undercover agent via an unlisted telephone number which had been circulated in the criminal community for the purpose of attracting those with stolen goods to sell. The fact that Wicks contacted the undercover agent with a firearm to sell, in addition to the fact that the price asked by Wicks was significantly low, gave the police sufficient reason to believe that the gun had been acquired by criminal means. When Wicks met with the undercover agent on February 25, 1986, he told the agent that the handgun had been sold although he "had just picked up some cameras [and] wanted to sell them."

In light of Wicks' previous offer to sell a handgun which police reasonably believed to have been stolen, this sudden offer to sell the undercover agent "some cameras" which he had "just picked up" reasonably led the police to believe that these too were stolen property. Thus, when the police were searching Wicks' bedroom for the handgun and they saw the camera, they had reasonable grounds to believe that it was also stolen. The police further noted that the camera seemed out of place since there was nothing in Wicks' residence that would indicate anyone living there had an interest in photography. The fact that Wicks had previously offered to sell cameras to the undercover agent who was posing as a buyer of stolen property, and the fact that the camera appeared out of place in Wicks' residence, coupled with considera-

tion of the police officers' collective experience, support a determination that the police did have probable cause to believe that the camera found in Wicks' bedroom was stolen. We conclude that the Superior Court did not err in ruling that these factors "triggered a reasonable belief" that the camera was contraband, and that the camera was properly seized. *See Mezzatesta v. State*, 166 A.2d at 436–37; *State v. Reader*, 328 A.2d at 148–49.

Having found that the Superior Court did not err in determining that the police were legitimately on Wicks' premises when they found the camera in question, and that the police also had probable cause to believe that the camera was contraband and therefore its seizure was proper, we need not discuss Wicks' remaining argument that all of the physical and related scientific evidence which was based upon the seizure of this camera should also have been suppressed as "fruits of the poisonous tree".

\* \* \*

Insofar as the rulings of the trial court deal with the trial of the defendant, they are affirmed, and this is a final decision in respect thereto. Insofar as the rulings of the trial court deal with the sentencing of defendant, those rulings remain under review by this Court subject to further consideration.